IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

ABBVIE, INC.,

Petitioner,

v.

QUINCY BIOSCIENCE HOLDING CO., INC.,

Respondent.

OPINION and ORDER

24-cv-679-jdp

---

Petitioner AbbVie, Inc., a biopharmaceutical company, agreed to manufacture apoaequorin, the main ingredient in the dietary supplement Prevagen, for respondent Quincy Bioscience Holding Co., Inc., which sells Prevagen. In exchange, Quincy agreed to purchase a set amount of apoaequorin from AbbVie each year. AbbVie and Quincy's business relationship soured after Quincy stopped buying apoaequorin from AbbVie and purported to terminate their agreement. An arbitration panel concluded that Quincy wrongfully terminated the agreement and awarded AbbVie about $125 million in damages, plus fees and expenses.

AbbVie moves to confirm and enforce the arbitration award, Dkt. 1; Quincy moves to vacate the award, Dkt. 9.[1] Quincy contends that the arbitration award violates public policy and the parties' agreement. The court will grant AbbVie's motion to confirm the arbitration award because Quincy hasn't shown that unusual circumstances warrant vacating the award.

---

[1] Quincy asks for oral argument on its motion, but the parties have adequately briefed the issues, making oral argument unnecessary.

BACKGROUND

This case involves two provisions in the parties' agreement: (1) the minimum purchase obligation provision, and (2) the limitation of liability provision. The minimum purchase obligation provision requires Quincy to purchase at least 2,000 kgA of apoaequorin annually. Dkt. 2, Ex. 1, art. I. If Quincy purchases less than 2,000 kgA of apoaequorin in a given year, it must pay AbbVie for the remainder. Dkt. 2, Ex. 1, § 3.8. The limitation of liability provision makes the breaching party liable for direct damages caused by the breach; however, the breaching party is not liable for other types of damages, including lost profits. *Id.* § 10.8. The term "direct damages" is not defined in the agreement.

ANALYSIS

The Federal Arbitration Act generally requires courts to confirm arbitration awards. 9 U.S.C. §§ 9–11. Courts may vacate arbitration awards only in "very unusual circumstances," such as when an arbitrator exceeds her powers or when the award violates public policy. *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 942 (1995); *see Zimmer Biomet Holdings, Inc. v. Insall*, 108 F.4th 512, 515–16 (7th Cir. 2024). As a result, arbitration awards are largely immune from judicial scrutiny. *Cont'l Cas. Co. v. Certain Underwriters at Lloyds of London*, 10 F.4th 814, 816 (7th Cir. 2021). Quincy contends that the court must vacate the arbitration award for two reasons: (1) it violates public policy; and (2) it violates the limitation of liability provision in the parties' agreement.

## A. Public policy

Quincy argues that the arbitration award violates public policy because it is based on the agreement's minimum purchase obligation provision, which Quincy says is a penalty clause.

Dkt. 10, at 10–15. Courts must not enforce arbitration awards that are contrary to well-defined public policy, as established by laws and legal precedents. *W.R. Grace & Co. v. Loc. Union 759, Int'l Union of the United Rubber, Cork, Linoleum & Plastic Workers of Am.*, 461 U.S. 757, 766 (1983). Clauses awarding an unreasonably large amount of liquidated damages violate public policy; they are unenforceable because they secure performance of contracts by punishing parties for breaching them. *See Smart Oil, LLC v. DW Mazel, LLC*, 970 F.3d 856, 863 (7th Cir. 2020); *River E. Plaza, LLC v. Variable Annuity Life Ins. Co.*, 498 F.3d 718, 722 (7th Cir. 2007); *see also* Restatement (Second) of Contracts § 356 (A.L.I. 1981).

The problem with Quincy's argument is that one must interpret the minimum purchase obligation provision to determine whether it is a penalty clause. *See Lake River Corp. v. Carborundum Co.*, 769 F.2d 1284, 1290 (7th Cir. 1985); *Checkers Eight Ltd. P'ship v. Hawkins*, 241 F.3d 558, 561 (7th Cir. 2001). When parties choose to resolve contractual disputes in arbitration, they elect to have *arbitrators* rather than courts decide the meaning of contractual language. *Quality Custom Distrib. Servs. LLC v. Int'l Bhd. of Teamsters, Loc. 710*, 131 F.4th 597, 599 (7th Cir. 2025); *Hill v. Norfolk & W. Ry. Co.*, 814 F.2d 1192, 1194–95 (7th Cir. 1987). Courts are bound by how the arbitrators interpret the contractual language. *Zimmer Biomet Holdings, Inc.*, 108 F.4th at 517.

In this case, the arbitration panel implicitly rejected the argument Quincy makes here. During arbitration, Quincy argued that the minimum purchase obligation provision was an unenforceable penalty clause:

> AbbVie's damages claim is premised on unenforceable liquidated damages. "Unreasonably large liquidated damages [are] unenforceable on grounds of public policy as a penalty." Section 3.8 of the [agreement] is exactly this type of unenforceable damages clause.

Dkt. 11, Ex. 8, at 10 (cleaned up). But the arbitration panel applied the minimum purchase obligation provision to determine AbbVie's damages. Dkt. 1, Ex. 6, at 2. In doing so, the arbitration panel tacitly concluded that the provision was a permissible liquidated-damages clause, not an unenforceable penalty clause. So construed, the agreement's minimum purchase obligation provision doesn't violate public policy. Quincy's argument fails.

## B. Limitation of liability

Quincy argues that the arbitration award violates the parties' agreement because it requires Quincy to pay for AbbVie's lost profits, which the agreement's limitation of liability provision explicitly prohibits. Dkt. 10, at 15–17. But Quincy forfeited this argument by failing to raise it during the arbitration proceedings.[2] Quincy resists this conclusion for two reasons.

First, Quincy contends that it raised its limitation of liability argument in the brief it filed after the arbitration hearing. Here is the pertinent part of that brief:

> Alternatively, if AbbVie seeks lost profits, AbbVie's analysis is speculative and cannot form the basis for damages. . . . Mr. Rule was unable to explain the impact profit had, if any, on his damages. . . . AbbVie's choice to obscure any ability for Quincy or the panel to evaluate AbbVie's damages claim is fatal, as it is AbbVie's burden to present evidence which establishes a reasonable basis for computing them.

Dkt. 11, Ex. 8, at 10. Quincy's post-hearing brief put the validity of AbbVie's damages claim into question by raising concerns about the reliability of AbbVie's evidence. But that's not the argument that Quincy seeks to make here. A party can't raise some validity issues before the arbitration panel and save others for the district court. *See Nat'l Wrecking Co. v. Int'l Bhd. of*

---

[2] AbbVie contends that Quincy *waived* this argument. Dkt. 22, at 18. But the court understands AbbVie to be contending that Quincy inadvertently failed to raise its limitation of liability argument during arbitration, which would mean that Quincy *forfeited* the argument. *United States v. Flores*, 929 F.3d 443, 447 (7th Cir. 2019).

*Teamsters, Loc. 731*, 990 F.2d 957, 960 (7th Cir. 1993). To avoid forfeiture, a party must give an arbitration panel a meaningful opportunity to consider *all* the issues. *See Lippert Tile Co., Inc. v. Int'l Union of Bricklayers & Allied Craftsmen, Dist. Council of Wis. & Its Loc. 5*, 724 F.3d 939, 944–46 (7th Cir. 2013). Quincy's post-hearing brief didn't give the arbitration panel a meaningful opportunity to consider its contract interpretation argument: the brief neither alerted the arbitration panel to the limitation of liability provision, nor explained how that provision might impact AbbVie's damages claim.

Second, Quincy contends that it raised its limitation of liability argument in the arbitration proceedings because its counsel asked AbbVie's expert whether his analysis accounted for AbbVie's lost profits, *see, e.g.*, Dkt. 11, Ex. 5, at 22, and the parties' agreement was part of the evidence before the arbitration panel. *See* Dkt. 30, at 11–12. Basically, Quincy is arguing that the arbitration panel had all the information it needed to conclude that the limitation of liability provision barred AbbVie from seeking lost profits as damages, so the court should conclude that Quincy properly preserved its argument.

But the court of appeals rejected a similar argument in *Ganton Technologies, Inc. v. International Union, United Automobile, Aerospace & Agricultural Implement Workers of America*, 358 F.3d 459 (7th Cir. 2004). The plaintiff in *Ganton Technologies, Inc.*, a company that owned machining and die casting facilities, wanted to present a contract interpretation argument during the enforcement proceeding in the district court, but the district court held that the company had forfeited the argument by failing to present it to the arbitrator. *See Ganton Techs., Inc.*, 358 F.3d at 462. On appeal, the company contended that it preserved its contract interpretation argument because it presented the information underlying the argument during the arbitration proceeding; specifically, the company gave the arbitrator a copy of the collective

bargaining agreement at issue. *See id.* The Seventh Circuit rejected the company's contention and held that merely presenting *information* isn't sufficient to avoid forfeiture; instead, a party must present its *arguments* to the arbitrator by explaining why the presented information leads to the outcome sought by the party. *See id.* at 463.

The same result follows here. It doesn't matter whether Quincy elicited testimony from AbbVie's expert that AbbVie's damages claim might include lost profits. Nor does it matter that the arbitration panel might have found the limitation of liability provision by reading the parties' agreement. Both are bits of information, not a full-fledged argument. To preserve its argument, Quincy needed to explain why the arbitration panel should reject AbbVie's damages claim based on the presented information. But Quincy didn't build a logical bridge between the information that it presented and the conclusion that it wanted the arbitration panel to reach, namely, that the limitation of liability provision precluded AbbVie from recovering its requested damages because they included lost profits. Quincy didn't present its argument to the arbitration panel, so it has forfeited the argument here.

Even if Quincy didn't forfeit its argument and adequately presented it to the arbitration panel, the argument would nevertheless fail because the arbitration panel applied the parties' agreement to determine AbbVie's damages, and the court is bound by the arbitration panel's interpretation of the agreement. *See E. Assoc. Coal Corp. v. United Mine Workers of Am., Dist. 17,* 531 U.S. 57, 62 (2000). Specifically, the panel applied the agreement's minimum purchase obligation provision to determine the damages award:

> Under Section 3.8 of the Master Agreement, Quincy is obligated to pay AbbVie $187,100,522 in minimum purchase obligations[.]

Dkt. 1, Ex. 6, at 2. The arbitration panel ultimately awarded AbbVie damages of $124,476,095. *Id.* at 3. The arbitration panel reached this figure by adding the lower end of the range of

6

AbbVie's "direct damages after accounting for costs it may be able to avoid and capacity it may be able to replace by finding one or more new customers" ($119,659,095) to the cost of the lots of apoaequorin that Quincy did not pay for ($4,817,000). *Id.* at 2–3. The panel also awarded AbbVie fees and expenses of $2,054,253.44. In total, the panel awarded AbbVie $126,530,348.44. *Id.* at 3–4. To reach this conclusion, the arbitration panel implicitly rejected Quincy's argument that AbbVie's damages claim included lost profits. Stated another way, the arbitration panel tacitly concluded that the term "direct damages" as used in the parties' agreement encompassed all the damages AbbVie sought. The court will not disturb the arbitration panel's decision.

One final point. AbbVie asks the court to schedule a status conference, Dkt. 40, but given the court's decision, a status conference is unnecessary. The court will deny the motion.

ORDER

IT IS ORDERED that:

1.  Petitioner AbbVie Inc.'s motion to confirm arbitration award, Dkt. 1, is GRANTED.

2.  Respondent Quincy Bioscience Holding Company, Inc.'s motion to vacate, Dkt. 9, is DENIED.

3.  AbbVie's motion for status conference, Dkt. 40, is DENIED as moot.

4.  The clerk of court is directed to enter judgment in favor of AbbVie and close this case.

Entered March 26, 2026.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge